Leo O. Berry *et al.*, Plaintiffs-Appellees; *v.* Nelson A. Schneider *et al.*, Defendants-Appellees.—(Cornelius Wierschem *et al.*, Intervening Defendants-Appellants.)

(No. 74-142;

Fifth District—March 26, 1975.

Walker & Williams, P.C., of Belleville (Harry J. Sterling, of counsel), for appellants.

Crowder & Associates, Ltd., of Columbia, for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

In an action to enjoin the maintenance of a dam, intervenors appeal an order of the trial court granting their petition for intervention but

denying their motions to set aside the decree and to dismiss the complaint.

All of the litigants involved in this case own land adjacent to or including part of the body of water known as Moredock Lake. In 1953 a complaint was filed in the county court of Monroe County seeking to have these lands detached from the Moredock & Ivy Landing Drainage District on the theory that they received no benefits from the district. A decree was issued granting this relief. In the decree the court ordered that a new drainage district be organized and that the district erect a dam to mark the line separating the area north of the dam which received no benefits from the area south of the dam which still remained in the district. A new drainage district was never organized, but in 1954 defendants Schneider erected an earthen dam on their own land. In 1957 they erected another dam a few yards north of the first. The effect of the dams was to raise the level of Moredock Lake, and, in the rains of 1972 and 1973, to cause the flooding of hundreds of acres of plaintiffs' lands.

In September 1973 plaintiffs filed a complaint alleging damage from waters backed up on their land because of the dams erected by defendants praying that the dams be opened so the water could return to the level existing before the dams were constructed. Plaintiffs filed their complaint on September 26, 1973, praying that the dam be opened and the water level in the aforementioned lake be maintained at a certain sea level elevation. Defendants entered their appearance on the same date, and the court entered a decree, again on the same date, ordering the opening of the dam and the lowering of the lake within 24 hours. Six days later the intervenors filed their petition to intervene together with motions to set aside the decree and to dismiss the plaintiffs' complaint. Judge Rutledge granted leave to intervene, and Judge Maeys, after a hearing on the motions to set aside the decree and dismiss the complaint, denied both.

The issue on appeal is whether or not the trial court erred in denying the intervenors' motion to set aside the decree.

We will not consider the intervenors' arguments regarding the right to intervene since the petition to intervene was granted. Although we do not believe the petition should have been granted, it does not affect the decision below. In our opinion Judge Maeys was not in error in denying intervenors' motions to set aside the decree and dismiss the complaint.

■■ Under the civil law rule of drainage followed in the State of Illinois the principle is so well established that a lower owner must not interfere with the natural drainage from upper land that citation of authority is unnecessary. Why the court in 1953, after ordering the detachment of these lands from the drainage district, also ordered that a new

drainage district be organized and a dam be constructed to demark the detached from the undetached lands we fail to understand. Not only was a dam unnecessary to demark the boundary between the detached and undetached land, but it would from the outset violate the drainage rights of upper owners. Furthermore, we fail to see how a court has authority sua sponte to compel the organization of a drainage district. This is a matter for landowners themselves to decide under procedures spelled out in detail in the Drainage Code. (Ill. Rev. Stat., ch. 42, par. 1—1 *et seq.*) Furthermore, if a district had been organized, the commissioners could not be compelled to construct a dam unless the plan of work as outlined by their engineers called for such. However, since no district was organized and no dam was constructed by a district, the part of the decree which was and still is effective is that detaching the lands from the Moredock & Ivy Landing Drainage District. Therefore, the allegation of intervenors that plaintiff was seeking to obtain a reversal of the trial court's decree of 1953 seems hardly justified, since the only part of that decree which ever became effective is not being challenged and is still operative to keep their lands from being assessed as a part of the Moredock & Ivy Landing Drainage District.

■■ Intervenors' complaint fails to allege or even to intimate any legal right they might have which should have been considered by the court after granting their petition for intervention. Item 3 of the complaint states that "* * * the relief sought adversely affects the interests of petitioners and will cause irreparable damage." Item 4 states that the complaint was an attempt to deprive the petitioners of their right to participate in the questions raised in the complaint. Item 5 states that the decree will permit a portion of Moredock Lake to be drained and deprive petitioners of its use. Intervenors also allege that the decree was fraudulent and that the purpose of the action was to compel them to again be subjected to assessment in violation of the 1953 decree. It is obvious that the decree will permit a portion of Moredock Lake to be drained. The purpose of the decree was to grant to the plaintiffs their legal right to drainage. In this connection it should be noted that the dams had not been maintained for 20 years before plaintiffs commenced their action and consequently no prescriptive right attached. While it is true that intervenors may be adversely affected because they might like to keep the shoreline where it is, this is hardly a basis for denying to plaintiffs a right of drainage which the trial court determined that they had. The trial court had intervenors' motions argued and was convinced that the right of the plaintiffs was clear and that intervenors had raised no legal issue giving them a right to participate further in the proceeding. The relief granted in the decree entered by the trial court does not, or

could not, directly affect the existing drainage districts, drainage tax assessments, or any other matters relating to the creation, maintenance or control of drainage districts, because drainage districts are solely creatures of statute. *In re Indian Grave District,* 2 Ill.2d 183, 117 N.E.2d 96.

Whether or not intervenors' land will be subject to assessment will be determined by future events which are not in any way an issue in this case. Currently intervenors' land is not in a drainage district; it cannot be included in a district in the future unless the applicable provisions of the Drainage Code are followed. Provisions in that Code adequately protect intervenors and give them a right to again prove that their lands cannot be benefited from the Moredock & Ivy Landing or any other drainage district.

■■ In *Wood v. Johnson,* 130 Ill.App.2d 552, 557, 264 N.E.2d 260, the court said: "If it appears that vacating the judgment would be a useless act, and that, ultimately, the obligation which is reflected by the judgment would necessarily be required to be imposed, then the court should not vacate the judgment." We feel that it was not error for Judge Maeys in the instant case to find that granting the intervenors' motion to set aside the decree would be a useless act. As we understand the drainage law in this State, the right of the plaintiff was clear, and it was exercised before the 20-year statute of limitations had run. Intervenors cannot claim a legal right to the continued enjoyment of a condition illegally created and which plaintiffs had a right to alter.

Affirmed.

G. MORAN and KARNS, JJ., concur.